FILED

2024 Apr-25  PM 01:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| MARJORIE WITHERSPOON, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )          Civil Action No. 5:23-cv-1485-CLS |
| | ) |
| VUTEQ USA, INC., | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION

This opinion addresses defendant's motion to dismiss plaintiff's "First Amended Complaint" (doc. no. 20).[1]

The plaintiff, Marjorie Witherspoon, is a 55-year-old African-American female who has been employed by defendant, Vuteq USA, Inc., since April of 2022 as a "Human Resources Generalist." On October 8, 2022, just five or so months after beginning her employment, plaintiff received a telephone call after normal business hours from an employee named Clifford Brascom.[2] She recorded the conversation, during which Brascom alleged that he had been sexually harassed by Darnea Gilbert,[3]

---

[1] Plaintiff filed her original complaint (doc. no. 1) on November 2, 2023. Defendant responded to that pleading on January 26, 2024, with a motion to dismiss (doc. no. 11). Plaintiff replied to that motion on February 12, 2024 (doc. no. 14), but two days later, she also filed a motion to amend her complaint (doc. no. 15). The motion to amend was granted, defendant's motion to dismiss the original complaint was denied as moot, and the Clerk was directed to file plaintiff's proposed "First Amended Complaint" (doc. nos. 16 & 17).

[2] Doc. no. 17, (First Amended Complaint), ¶ 13.

[3] *Id.*, ¶ 14.

one of the Assistant Managers of defendant's Department of Human Resources and plaintiff's immediate supervisor.[4]  Plaintiff forwarded Brascom's complaint to two persons the following day:  *i.e.*, Katie Thornton, another Assistant Manager in defendant's Department of Human Resources; and, Kurt Anderson, defendant's Plant Manager.[5]

After receiving no response from either Thornton or Anderson for more than a week, plaintiff sent an email report of Brascom's allegations to Helen Fuller, defendant's corporate Human Resources Manager, on October 17, 2022.  Fuller telephoned plaintiff the next day and directed her to delete the recording of Brascom's complaint, but also instructed her to obtain additional information about his allegations.[6]

On some unspecified date thereafter, Fuller sent plaintiff an email asking whether she had retained the recording, despite her previous instruction to delete it.[7] Plaintiff had not yet deleted the recording, and forwarded a copy to Fuller.[8]

On Wednesday, November 2, 2022, Human Resources Assistant Manager Katie Thornton informed plaintiff that she was to be suspended until the following

---

[4] *Id.,* ¶¶ 13-14.

[5] *Id.,* ¶¶ 15-16.

[6] Doc. no. 17 (First Amended Complaint), at ¶¶ 17, 19.

[7] *Id.,* ¶ 20.

[8] *Id.*, ¶¶ 20-21.

Monday.[9]  The next day, Helen Fuller sent plaintiff an email stating that she had received multiple complaints that plaintiff "had made harassing comments about Ms. Gilbert that rose to the level of harassment," and that her suspension would be extended, pending further investigation of the complaints.[10]  Fuller also told plaintiff that Brascom's allegations had been investigated, and determined to be unfounded.[11]

Plaintiff met with Fuller on November 9, 2022, and was told that a "final written warning" would be issued to her for harassing Darnea Gilbert.  Fuller accused plaintiff of "talking to everyone about the sexual harassment that had been reported to her."[12]  Fuller told plaintiff that her suspension would be without pay, but that she could return to work on November 14, 2022.  On some unspecified date thereafter, Fuller told plaintiff that the suspension was due to her "lack of ethics, lack of knowledge, and her behavior," and not because she had recorded her conversation with Brascom.[13]

Plaintiff provided Fuller with a formal statement, and asked that she be protected against retaliation for reporting Brascom's sexual harassment allegations.[14]

---

[9] *Id.,* ¶ 22.

[10] *Id.,* ¶ 23.

[11] *Id.*

[12] Doc. no. 17 (First Amended Complaint), at ¶¶ 24-25.

[13] *Id*., ¶¶ 26, 28.

[14] *Id.,* ¶ 29

When plaintiff returned to work on November 14, she was notified that she was reassigned to work "off-site." Additionally, her computer was "wiped clean," and she was issued a new email address.[15]

Plaintiff alleges that Gilbert retaliated against her for forwarding to her supervisor the report of sexual harassment that she had received in her capacity as a Human Resources Generalist. Plaintiff contends that the retaliation consisted of not only her suspension without pay, but also included "blocking her access to the necessary files to conduct her job performance, intentionally failing to inform [her] of meetings, and intentionally failing to include [her] on pertinent email communication."[16]

Plaintiff also alleges that she was subjected to discrimination on the basis of her race, African-American, as well as her age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*.

## I.  STANDARDS OF REVIEW

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That provision must be read together with Rule 8(a), which requires that

---

[15] *Id.*, ¶¶ 33-34.

[16] *Id.,* ¶ 37 (alteration supplied).

4

a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S. at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a compliant is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the

complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 409 F.3d at 157–58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alteration supplied).

## II. DISCUSSION

### A. Plaintiff's Race Discrimination Claims

Counts I and IV of plaintiff's amended complaint allege disparate treatment based upon her race. Count I alleges that she was suspended by her white supervisor, and that she was the only black woman reassigned to work at an offsite location.

Count IV again complains of plaintiff's suspension, and states that defendant "intentionally treated [her] worse than other employees because she is an African American woman."[17]  Those disparate treatment claims are based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.[18]

Plaintiff does not provide direct evidence of discrimination.  Accordingly, she must prove her claims with circumstantial evidence, navigating the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as augmented in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).[19]  Under that framework, plaintiff must first establish a *prima facie* case of

---

[17] Doc. no. 17 (First Amended Complaint), at ¶ 80.

[18] The relevant subsections of 42 U.S.C. § 1981 read as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

[19] Those cases arose under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* but the same framework applies to claims bottomed upon Section 1981. *See, e.g.*,

disparate treatment.  If she does so, that gives rise to a presumption of discrimination, which the employer must rebut by articulating a legitimate, nondiscriminatory reason for the disputed employment action.  If the employer satisfies its burden, the presumption of discrimination drops from the case, and the burden shifts back to the plaintiff, to show that the employer's proffered reason is merely a pretext for unlawful discrimination.  *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-56.

In order to establish a *prima facie* case of disparate treatment based upon the plaintiff's race, she must show:  (1) that she is a member of a protected class (*i.e.*, African-Americans); (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her protected class more favorably; and (4) she was qualified to perform the duties of her position.  *See, e.g.*, *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008); *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).

Plaintiff alleges that her suspension without pay amounted to an adverse employment action.  The Eleventh Circuit agreed in principle, when holding that "actions that affect compensation are considered adverse employment actions." *Gillis v. Georgia Department of Corrections*, 400 F.3d 883, 887-88 (11th Cir. 2005).  Even

---

*Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 919 (11th Cir. 2018).

so, defendant argues that plaintiff's suspension did not rise to the level of a "serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds as recognized by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008).

Even if this court were to conclude that plaintiff's suspension was more than a *de minimis* deprivation of compensation, she still failed to establish the third element of a *prima facie* case: *i.e.*, that similarly situated employees outside her protected class were treated more favorably. In order to satisfy that element, a plaintiff must identify a comparator who is "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1224 (11th Cir. 2019). Plaintiff, however, did not identify *any* comparator, much less one who was similarly situated. Plaintiff's conclusory statements that "white employees received preferential treatment,"[20] and that "complaints made by black employees were not given the same time and attention given to those made by white employees,"[21] are not sufficient to satisfy her burden to allege a *prima facie* case of race discrimination. Accordingly, Counts I and IV are due to be dismissed.

---

[20] Doc. no. 17 (First Amended Complaint), at ¶ 38.

[21] *Id.*, ¶ 39.

9

**B.      Retaliation Claim**

"Retaliation is a separate violation of Title VII" of the Civil Rights Act of

1964.  *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).

Section 704(a) of that Act provides protection for employees who oppose unlawful

employment practices, or participate in activities to correct an employer's

discriminatory practices.

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees or applicants for employment
> . . . because he [the employee] has opposed any practice made an
> unlawful employment practice by this subchapter, or because he has
> made a charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (ellipsis and alteration supplied).  Congress thus recognized

two predicates for retaliation claims:  one for *opposition* to discriminatory practices,

and another for *participation* in protected activity.

> Under the opposition clause, an employer may not retaliate against an
> employee because the employee "has opposed any practice made an
> unlawful employment practice by this subchapter."  . . .  And, under the
> participation clause, an employer may not retaliate against an employee
> because the employee "has made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or hearing
> under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d

1171, 1174 (11th Cir. 2000) (citations omitted).  Plaintiff's claim of retaliation arises

under the opposition clause.

To state such a claim, plaintiff must allege that she engaged in protected activity, that she thereafter suffered an adverse employment action, and that the adverse employment action was causally related to the protected activity. *See, e.g., Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012).

Defendant contends that plaintiff cannot show she engaged in protected activity, because the only act she alleges in the amended complaint was her report of Brascom's allegation of sexual harassment, which she passed along in her capacity as a Human Resources Generalist. In other words, defendant argues that plaintiff's claim that she engaged in protected activity is foreclosed by the so-called "manager rule," which the Eleventh Circuit explained as follows:

> In essence, the "manager rule" holds that a management employee that, in the course of her normal job performance, disagrees with or opposes the actions of an employer does not engage in "protected activity." Instead, to qualify as "protected activity" an employee must cross the line from being an employee "performing her job . . . to an employee lodging a personal complaint."

*Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 787 (11th Cir. 2012) (citations omitted; ellipsis in original).

Plaintiff failed to file a meaningful response to defendant's argument. Instead, she referred to irrelevant state court cases, and made conclusory statements that she

had satisfied the *prima facie* elements of a retaliation claim. Accordingly, the court concludes that plaintiff did not establish that she engaged in protected activity, and Count II of the amended complaint also is due to be dismissed.

## C.    Age Discrimination Claim

The *McDonnell Douglas* burden shifting framework also applies to plaintiff's claim under the Age Discrimination in Employment Act. Plaintiff must show that she is a member of a protected class (*i.e.*, more than forty years of age), that she was qualified for her position, that she was subjected to an adverse employment action, and, that she was treated less favorably than a younger employee. *See Chapman v. AI Transport*, 239 F.3d 1012, 1024 (11th Cir. 2000).

Plaintiff alleges only the following with regard to her age discrimination claim: she "was tormented by other employees at Vuteq, USA";[22] and, "Ms. Gilbert, [plaintiff's] direct supervisor[,] and other employees routinely commented on [plaintiff's] age. Comments were made that [plaintiff] did not think and move quite as fast as the other employees."[23] These allegations, standing alone, are not sufficient to state a claim for age discrimination. Moreover, plaintiff has failed to identify any younger, similarly situated employee who was treated more favorably than she.

---

[22] Doc. no. 17 (First Amended Complaint), at ¶ 71.

[23] *Id.,* ¶ 72 (alteration supplied).

Accordingly, Count III of the amended complaint also is due to be dismissed.

## III.  CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss is due to be granted.  While, ordinarily, a plaintiff might be given an opportunity to amend the complaint, the court concludes that a second amendment would be futile.  Plaintiff already has amended her complaint with the benefit of defendant's identification of the original complaint's deficiencies.  She failed to cure those deficiencies; and, given the facts alleged, the court concludes that she would be unable to state any claim upon which relief might be granted.

A separate judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 25th day of April, 2024.

_____
Senior United States District Judge